IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHELLE N. FIELDS,

    Plaintiff,

v.

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security
Administration,

    Defendant.

Civ. No. 6:15-cv-2229-MC

OPINION AND ORDER

MCSHANE, Judge:

    Plaintiff Michelle Fields brings this action for judicial review of the Commissioner's decision denying her application for disability insurance benefits and supplemental security income. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

    Fields alleges disability due to degenerative disk disease, back strains, migraines, fibromyalgia, and loss of depth perception in the right eye. After a hearing, the Administrative law judge (ALJ) concluded Fields could perform the jobs of charge account clerk, addresser, and document preparer. Tr. 21.[1] Fields argues the ALJ erred in finding her less-than credible, in rejecting the opinion of her treating physician, and in failing to credit law witness evidence. Because the Commissioner's decision is based on proper legal standards and supported by substantial evidence, the Commissioner's decision is AFFIRMED.

---

[1] "Tr" refers to the Transcript of Social Security Administrative Record provided by the Commissioner.

1 – OPINION AND ORDER

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, we review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)).

## DISCUSSION

The Social Security Administration utilizes a five step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520 & 416.920 (2012). The initial burden of proof rests upon the claimant to meet the first four steps. If claimant satisfies his or her burden with respect to the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner's burden is to demonstrate that the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity (RFC), age, education, and work experience. *Id*.

Fields alleges disability as of June 29, 2010. On that day, Fields was involved in a traffic accident. Fields's vehicle was rear ended by another vehicle and Fields suffered whiplash. The

2 – OPINION AND ORDER

accident was what one would characterize as a relatively minor accident. Fields managed to drive away from the accident and her airbags did not deploy. Before the accident, Fields worked as a dental assistant. Other than for a few days several months after the accident, Fields did not return to work.

The ALJ found Fields suffered from the following severe impairments: lumbar and thoracic spine degenerative disc disease; fibromyalgia; cervical, thoracic, and lumbar strains; migraines; and right eye low vision status post corneal transplant. Tr. 16. After a hearing, the ALJ issued a written opinion concluding Fields was not disabled under the Social Security Act. Tr. 13-22. In reaching that conclusion, the ALJ determined Fields was less-than credible regarding the severity of her symptoms and the extent of her limitations. Fields challenges that determination, along with the ALJ's weighing of the opinion of Fields's treating physician and lay evidence.

**1. The ALJ's Adverse Credibility Determination**

Field's primary complaint is from back pain related to the car accident. The objective findings were normal, showing only minor impairments. Because of the relatively normal objective findings, this case turns primarily on Fields's credibility regarding her symptoms and limitations.

The ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir.1989)). The ALJ "may consider a wide range of factors in assessing credibility." *Ghanim v. Colvin*, 12-35804, 2014 WL 4056530, at *7 (9th Cir. Aug. 18, 2014). These factors can include "ordinary techniques of credibility evaluation," *id.*, as well as:

3 – OPINION AND ORDER

>  (1) whether the claimant engages in daily activities inconsistent with the alleged symptoms; (2) whether the claimant takes medication or undergoes other treatment for the symptoms; (3) whether the claimant fails to follow, without adequate explanation, a prescribed course of treatment; and (4) whether the alleged symptoms are consistent with the medical evidence.

*Lingenfelter v. Astrue,* 504 F.3d 1028, 1040 (9th Cir.2007). The ALJ in this case supported her credibility determination with references to several of the above factors.

The ALJ also pointed to the fact that during much of the time period in question, Fields applied for, and received, unemployment benefits. The parties agree that in Oregon, one may receive unemployment benefits even if one is unable to work full-time. While that may be so, it does not follow, as Fields argues, that the ALJ erred in pointing to Fields's unemployment benefits in finding her less-than credible. Fields testified to severely debilitating limitations. For example, Fields testified she "cannot sit for longer than 40 minutes without severe spasms." Tr. 40. When Fields looked down for too long, she claimed to "get a severe migraine which will last a day or two." *Id.* Fields could walk for only two and a half blocks before she would have to sit down and rest due to "extreme pain." Tr. 42. She testified she could stand for about five minutes before needing to sit down from the pain. Tr. 43. Blow drying her hair resulted in sharp pain down her legs and back. Tr. 45. When the ALJ asked why she did not cut her long hair, Fields testified she only gets her hair cut once or twice a year because sitting in the beautician's chair results in bad headaches and shoulder and neck pain. *Id.* Fields stated she spends over half of her average day lying down, tr. 51, and often times even reclining hurt, tr. 50.

Even though one need not work full time to collect unemployment benefits, the ALJ did not err in finding a dichotomy between Fields's receipt of unemployment benefits and the severity of the her alleged limitations. Applying for unemployment benefits means one holds oneself out as retaining the ability to do "some work." *See* Or. Admin. R. 471-030-0036(3)(e).

4 – OPINION AND ORDER

But Fields's own allegations as to her limitations—she could walk two and a half blocks, stand five minutes, sit for 40 minutes before needing to rest, and lies down the majority of the day— portray a person unable to perform essentially any job, for any amount of time. The ALJ's reference to Fields's unemployment benefits is a specific and legitimate reason, supported by substantial evidence, in finding Fields not credible.

The ALJ pointed to other evidence supporting her credibility finding. For example, the ALJ noted the fact that Fields lived with her two young children did not align with her severe limitations. While Fields testified her mother came over to help approximately once or twice per week, the ALJ did not err in noting that the requirements of maintaining a household with a ten and twelve year old did not fit with Fields's testimony as to severe limitations. The ALJ also noted that despite alleging she was "blind," Fields had managed to work for many years with right eye vision loss following a corneal transplant. Tr. 41. Finally, the ALJ noted that despite the fact that claimant testified she was unable to sit for 40 minutes without suffering "severe spasms," Fields sat comfortably during the 40 minute hearing.

Here, the ALJ provided "specific, clear and convincing reasons" for rejecting Fields's testimony. *Vasquez v. Astrue*, 572, F.3d 586, 591 (9th Cir. 2009) (quoting *Smolen v. Charter*, 80 F.3d 1273, 1282 (9th Cir. 1996)).

**2. Dr. Cordes's Opinion**

Where there exists conflicting medical evidence, the ALJ is charged with determining credibility and resolving any conflicts. *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012). When a treating physician's opinion is contradicted by another medical opinion, the ALJ may reject the opinion of a treating physician only by providing "specific and legitimate reasons

supported by substantial evidence in the record." *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

Dr. Kathleen Cordes was Fields's primary care physician during the time in question. Dr. Cordes treated Fields once every three to six months. Tr. 443. In December 2012, Dr. Cordes completed a Residual Functional Capacity Questionnaire (RFCQ). Tr. 443-44. Dr. Cordes opined Fields's impairments would cause her to miss work more than four times per month and Fields was unable to work a 40 hour week on a sustained basis. Tr. 443. Dr. Cordes opined Fields could walk 1 block without significant pain, could sit for two hours in an eight hour workday, and stand/walk for two hours in an eight hour workday. Tr. 443. The ALJ gave Dr. Cordes's opinion little weight as it was based on Fields's subjective reporting and unsupported by the record.

The ALJ did not err in concluding Dr. Cordes's opinion was based on Fields's subjective reporting. Other than noting some tenderness and tightness, Dr. Cordes's objective findings upon examination were relatively normal. "An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). As noted above, the ALJ did not err in finding Fields not credible. Because Dr. Cordes's opinion was based largely on Fields's subjective reporting, the ALJ did not err in assigning little weight to the RFCQ.

The ALJ also contrasted Dr. Cordes's opinion with that of Dr. Mark Leadbetter. Dr. Leadbetter, an orthopedic surgeon, performed an independent medical exam several months after Fields's car accident. The ALJ pointed to the objective findings of Dr. Leadbetter, a specialist. Fields's subjective reports to Dr. Leadbetter generally mirrored her reports to Dr. Cordes and the ALJ. Fields told Dr. Leadbetter any activity produces increased pain, she could sit for 20

minutes, she could walk for five minutes before feeling increased pain, and she could not shop for groceries. Tr. 452. She had difficulty sleeping and wakes up throughout the night with pain.

During the examination, Fields's gait, tandem gait, toe and heel walking were intact. Tr. 453. Her posture was normal and she could put full weight on either foot. There was some tenderness in the C6-7 region. Upon reviewing X-rays, Dr. Leadbetter concluded Fields had cervical and lumbar strains related to the car accident but the mild degenerative changes in her spine pre-existed the accident. Dr. Leadbetter concluded:

> At the time of the examination, there were no significant abnormal objective findings that would correlate with severe pain complaints that were being expressed by Ms. Fields.
>
> * * * *
>
> Ongoing pain complaints are felt to be disproportionate to a three month old non-serious motor vehicle accident. The damage incurred by Ms. Fields' vehicle is not considered a major motor vehicle accident and these types of accidents do not produce major bodily injury.
>
> There are no objective findings to support her subjective complaints.
>
> * * * *
>
> At the time of this examination there was no evidence of a cervical radiculopathy. There is no evidence of a cervical myelopathy and there is no evidence of a lumbar radiculopathy.
>
> Her ongoing pain complaints are on a subjective basis without documented abnormal objective findings to substantiate the subjective complaints.
>
> The psycho-emotional factors appear to be overwhelming at the time of examination.[2]

Tr. 455-56.

The ALJ gave Dr. Leadbetter's opinion significant weight. An ALJ may assign greater weight to the opinion of a specialist. *Benecke v. Barnhart*, 379 F.3d 587, 594 n.4 (9th Cir. 2004).

---

[2] Fields does not allege any mental health impairments. Tr. 41.

7 – OPINION AND ORDER

In addition to being a specialist, Dr. Leadbetter also based his opinion on the objective medical evidence, i.e., imaging results and his own objective findings upon examination.

Although Fields argues another interpretation of the record is reasonable, that is not a legitimate reason for overturning the ALJ's conclusions. *Gutierrez*, 740 F.3d at 523 (quoting *Reddick*, 157 F.3d at 720-21) ("If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner.")). The ALJ did not err in assigning little weight to Dr. Cordes's opinion.

### 3. Lay Evidence

Fields argues the ALJ erred in not crediting the lay evidence provided by her mother and friends. The law witness statements generally echoed Fields's own testimony regarding her limitations. The ALJ gave some weight to the lay testimony, but noted it conflicted with the record and objective medical evidence and was based on Fields's unreliable self-reporting.

An ALJ must provide "germane reasons" for rejecting lay testimony. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). The ALJ need not discuss every witness's testimony, and "if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). Inconsistency with other evidence in the record is a germane reason for rejecting the testimony of a lay witness. *Lewis*, 236 F.3d at 511. Further, it is not reversible error to reject lay testimony when "the lay testimony described the same limitations as [claimant's] own testimony, and the ALJ's reasons for rejecting [claimant's] testimony apply with equal force to the lay testimony." *Molina*, 674 F.3d at 1122.

As noted, the ALJ provided clear and convincing reasons for finding Fields not credible. That alone is a germane reason to reject similar lay testimony. Additionally, some of the

8 – OPINION AND ORDER

mother's statements, such as the fact that Fields had "4-6 collapsed discs," are contradicted by the objective medical evidence.

## CONCLUSION

The Commissioner's decision that plaintiff is not disabled was supported by substantial evidence in the record and is therefore AFFIRMED. This case is dismissed.

IT IS SO ORDERED.

DATED this 11th day of January, 2017.

_____/s/ Michael J. McShane _____
Michael McShane
United States District Judge

9 – OPINION AND ORDER